UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ATTILA KISS,

                                     Petitioner,

                                                              Case # 16-CV-1011-FPG

v.

                                                              DECISION AND ORDER

NIAGARA COUNTY JAIL (HEAD),
CHIEF PAYNE, and U.S. MARSHALS SERVICE ("USMS")
FOR THE WESTERN DISTRICT OF NEW YORK,

                                     Respondents.

## INTRODUCTION

On December 19, 2016, *pro se* Petitioner Attila Kiss, a Romanian national, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3). *See* ECF No. 1. In it, Kiss challenges the Certification and Committal for Extradition issued by United States Magistrate Judge Michael J. Roemer on December 15, 2016. *See id.* Specifically, Kiss alleges that he has been held pending extradition since March 10, 2013, which renders Judge Roemer's Certification invalid under the terms of the Extradition Treaty between Romania and the United States of America. *See id.*

Kiss has since moved for summary judgment, ECF No. 9, and, recently, for a hearing on his Petition, ECF No. 12.

For the reasons stated, Kiss's Petition for a Writ Habeas Corpus is DENIED and, consequently, his Motions for Summary Judgment and a hearing are DENIED AS MOOT.

## BACKGROUND

This case has a long and complicated history that begins with Kiss's Romanian convictions. On January 3, 2011, the Târgu-Mureş Local Court in Romania issued Detention Warrant No. 86/2010 for Kiss. 16-MJ-5090, ECF No. 1 ¶ 4.[1] The Warrant was based on Kiss's conviction on

---

[1] This citation refers to the extradition proceedings held before Judge Roemer. Later, the Court will also refer to Kiss's prosecution in the Northern District of New York ("NDNY") for immigration charges. Unless a different case number is provided, all citations to the docket refer to the instant case: 16-CV-1011.

two counts: one count of forgery of an official document in violation of Article 288, Paragraph 1, of the Criminal Code of Romania ("CCR"), and one count of conspiracy to commit a crime in violation of Article 323, Paragraph 1, of the CCR. ECF No. 7 at 62. Kiss was subsequently sentenced to three years and six months' imprisonment. *Id.* at 60. Kiss was represented by counsel for the prosecution of the case, and was present for all but the issuance of the penal judgment and the proceedings thereafter. *Id.*

Kiss reappeared in Champlain, New York, on March 10, 2013, where he was arrested for improperly entering the United States in violation of 8 U.S.C. § 1325(a)(1). 8:13-MJ-114-LAK, Northern District of New York ("NDNY"), ECF No. 1. Kiss pled guilty to violating Section 1325(a)(1) on April 11, 2013, and was sentenced to time served. 8:13-PO-18-LAK, NDNY, ECF Nos. 1-2. He was subsequently held without bond pending removal proceedings. *See* ECF No. 9 at 82-87. A Warrant of Removal/Deportation was formally issued on January 16, 2014, to begin removal proceedings. ECF No. 1 at 53.

The Second Circuit then ordered a stay of Kiss's removal proceedings on February 23, 2015. ECF No. 9 at 73.

On June 15, 2015, the Embassy of Romania submitted Diplomatic Note 1751, formally requesting the extradition of Kiss. *See* ECF No. 1 at 6-9. The Embassy submitted the request pursuant to the Extradition Treaty between Romania and the United States signed on September 10, 2007. Extradition Treaty with Romania and Protocol to the Treaty on Mutual Legal Assistance in Criminal Matters with Romania, U.S.-Rom., Sept. 10, 2007, S. Treaty Doc. No. 110-11 (hereinafter "Treaty").

On September 1, 2016, Assistant United States Attorney Aaron J. Mango filed a complaint for and on behalf of the Romanian government seeking to extradite Kiss under 18 U.S.C. § 3184. *See* 16-MJ-5090, ECF No. 1. After several hearing, Judge Roemer issued his Certification and

2

Committal for Extradition on December 15, 2016. *See* 16-MJ-5090, ECF No. 15 at 19, ECF No. 17.

In response, Kiss filed the instant Petition, which is currently before the Court.

## LEGAL STANDARD

Under 18 U.S.C. § 3184, a magistrate judge may consider evidence of criminality and any existing extradition treaty to determine whether an individual may be extradited to a foreign nation. If the magistrate judge finds that an individual is extraditable, she must then "certify . . . to the Secretary of State[] that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention[.]" 18 U.S.C. § 3184. It is the Secretary of State, not the magistrate judge, who has final and discretionary authority to extradite the fugitive.[2] *See* 18 U.S.C. §§ 3184, 3186; *see also Lo Duca v. United States*, 93 F.3d 1100, 1103-04 (2d Cir. 1996) ("[T]he Secretary of state has final authority to extradite the fugitive, but is not required to do so.").

"Because extradition orders are regarded as preliminary determinations, and not 'final decisions' appealable as of right under 28 U.S.C. § 1291, they may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Skaftouros v. United States*, 667 F.3d 144, 157 (2d Cir. 2011) (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976)). "Courts have consistently held that habeas corpus is available to an extraditee 'only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Id.* (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Importantly, the Second Circuit has held that "consideration of the procedures that will

---

[2] Extradition is primarily an executive function. *See In re Extradition of Mujagic*, 990 F. Supp. 2d 207, 213-14 (N.D.N.Y. 2013) (quoting *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir.1993)) ("The power to extradite derives from the President's power to conduct foreign affairs."). Congress, however, assigned the Courts a limited power to review the evidence on which a complaint to extradite is based. *See id.*

or may occur in the requesting country is not within the purview of a habeas corpus judge." *Ahmad v. Wigen*, 910 F.2d 1063, 1066-67 (2d Cir. 1990).

The Second Circuit has also held that "in order to merit habeas relief in a proceeding seeking collateral review of an extradition order, the petitioner must prove by a preponderance of the evidence that he is in custody in violation" of 18 U.S.C. § 3184 or the applicable extradition treaty. *Skaftouros*, 667 F.3d at 158 (quotation marks omitted). With these principles in mind, the Court turns to its analysis of Kiss's Petition.

**DISCUSSION**

In his Petition, Kiss makes three arguments: (1) because he has been in custody for approximately five years, he no longer has any time left to serve for the sentence of his Romanian conviction, and, thus, he should be released under the terms of the Treaty; (2) the Romanian offense of which Kiss was convicted does not render him extraditable under the terms of the Treaty; and (3) Kiss has been improperly held since March of 2013.[3] *See* ECF Nos. 1, 9.

Kiss's first and third arguments do not fall into one of the three categories of inquiry that the Court may make. His second argument, however, does. Specifically, he alleges that his Romanian offenses are not covered by the treaty.[4]

To determine whether a treaty covers a specific offense, the Court must review the applicable treaty and construe its language liberally. *In re Extradition of Mujagic*, 990 F. Supp. 2d 207, 217 (N.D.N.Y. 2013) (citing *Skaftouros*, 667 F.3d at 155).

---

[3] "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (quotation marks and alteration omitted). The Court construes Kiss's submissions accordingly.

[4] For clarity, Kiss does not allege that Judge Roemer did not have jurisdiction over this case, nor does he allege that there was insufficient evidence to support the Judge Roemer's finding that there was reasonable ground to find Kiss guilty.

Here, Article 2 of the Treaty, titled "Extraditable Offenses," describes what offenses may result in extradition: "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Parties by deprivation of liberty for a period of more than one year or by a more severe penalty." Treaty, art. 2. Consequently, if the crimes of which Kiss was convicted are punishable by more than one year in both Romania and the United States,[5] the offenses are covered by the Treaty.

They are. Kiss was convicted of two crimes in Romania: forgery of an official document and conspiracy to commit a crime. ECF No. 7 at 62. Kiss was convicted of these crimes because he conspired to forge passports and national identity cards, and then did so. *Id.* In Romania, a conviction for those crimes is punishable by more than a year of incarceration; Kiss was sentenced to three years and six months imprisonment for his crimes. *Id.* at 60. In the United States, the same crimes are also punishable by more than one year of imprisonment: forging a passport, without any additional criminal act, can result in fifteen years' imprisonment, 18 U.S.C. § 1543, and conspiring to commit an offense against the United States can result in five years' imprisonment, 18 U.S.C. § 371.[6] As a result, the requirements of the Treaty are satisfied, the offenses are covered by the Treaty, and Kiss's only challenge to Judge Roemer's findings fails.

---

[5] This requirement is commonly known as the "dual criminality" requirement. *See Lo Duca*, 93 F.3d at 1111. In order to extradite Kiss, the offenses for which he is being extradited must be punishable under both Romanian and American criminal law. *Id.* The Treaty adds an additional requirement—the offenses must be punishable by a year or more of incarceration.

[6] The Court notes that the CCR and United States Code need not "describe the offense by the same terminology" or place the offense within the same category of offenses. Treaty, art. 2.

5

## CONCLUSION

For the foregoing reasons, Kiss's Petition for a Writ of Habeas Corpus, ECF No. 1, is DENIED and, consequently, his Motions for Summary Judgment and a hearing, ECF Nos. 9, 12. are DENIED AS MOOT. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: June 8, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court